UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA DIANE DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:18-cv-2415-WBS–KJN<br><br><u>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT</u><br><br>(ECF Nos. 17, 24) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Title XVI supplemental security income.[1] In her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in: assessing plaintiff's physical and mental impairments at step two; weighing the medical and opinion evidence in the record; formulating plaintiff's residual functional capacity; failing to ensure complete development of the record; and failing to address a previous disability determination. The Commissioner opposed and filed a cross–motion for summary judgment.

The undersigned FINDS the ALJ failed to develop the record as to plaintiff's mental impairments, and thus RECOMMENDS the court deny the Commissioner's motion for summary judgment, grant plaintiff's motion for summary judgment, and remand for further proceedings.

---

[1] This action was referred to the undersigned for findings and recommendations pursuant to Local Rule 302(c)(15). (<u>See</u> ECF Nos. 7, 9.)

1

I. **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

Plaintiff applied for supplemental security income on October 7, 2014, alleging a disability beginning November 15, 2011. (Administrative Transcript ("AT") 211, 215.) Plaintiff claimed the following medical conditions: "Neck injuries; 12 surgeries, including two total knee replacements; left knee torn ACL surgery soon; severe joint pain in hands; major neck surgery in 2011; diverticulitis." (AT 99.) Plaintiff's application was denied initially and again upon reconsideration; aided by an attorney, she sought review of these denials with an ALJ. (AT 110, 123, 151-53.) At a December 15, 2016 hearing, plaintiff testified about her conditions, and the ALJ heard testimony from a vocational expert regarding plaintiff's ability to work. (AT 43-72.)

On March 29, 2017, the ALJ issued a decision determining that plaintiff was not disabled for the relevant period. (AT 24-41.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since October 6, 2014 — plaintiff's application date. (AT 26.) At step two, the ALJ found plaintiff to have had the following severe impairments:

> [D]egenerative disc disease of the cervical spine status post C3 through C7 cervical laminoplasty; right knee pain status post total right knee replacement; status post left knee arthroscopy with ACL reconstruction; degenerative joint disease of the left knee; depression; and anxiety disorder not otherwise specified.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:
  **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
  **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
  **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
  **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
  **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1 (Id.) The ALJ determined at step three that these impairments did not meet or medically equal the severity of a listed impairment. (Id.) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

Based on this information, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work, except that she could:

> [S]tand and walk up to two hours in an eight-hour day, but no more than 15 minutes at a time; no limits sitting; only occasional bending, stooping, crouching, and climbing stairs; no kneeling or crawling; must avoid hazards such as unprotected and moving machinery; can understand, remember, and carry out instructions involving up to three-step commands; limited to exercising only simple work-related judgments; no more than occasional changes to the routine work setting; no more than occasional interaction with members of the public, coworkers, and supervisors; cannot be expected to work with coworkers as part of a team, but is capable of being in the same work environment with coworkers; although stress tolerance is poor, can function in production-oriented jobs that require only simple decision-making, and cannot be expected to engage in independent planning and goal setting, but can understand, remember, and carry out fixed plans and goals when performing routine and repetitive work.

(AT 28.) In reaching this conclusion, the ALJ stated he considered "all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all of [plaintiff's] medically-determinable impairments." (AT 28-29.) Relevant here, the ALJ found that the "medical evidence concerning the claimants' mental impairments [indicate plaintiff] has a history of depression and anxiety that predates her October 2014 application date for which she was treated with psychotropic medication by her treating medical doctors." (AT 31.) However, the ALJ concluded the records also indicated her "mental status exams were generally normal," and that her "symptoms were conservatively treated with psychotropic medication and counseling." (Id.) Ultimately, the ALJ concluded at steps four and five that while plaintiff was incapable of performing past relevant work, jobs existed in significant numbers in the national economy that plaintiff could still perform given the restrictions detailed in the RFC. (AT 34-35.)

In March of 2018, the Appeals Council denied plaintiff's request for review. (AT 10-15.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross–motions for summary judgment. (ECF Nos. 1, 17, 24.)

///

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

## III. ISSUES PRESENTED

Plaintiff alleges multiple errors on the ALJ's part, which can be generally categorized into three arguments. First, plaintiff contends the ALJ's assessment of her mental impairments is faulty, because the record was incomplete as to her mental-health treatment, and evidence of her bipolar and other mental conditions was ignored; thus plaintiff argues her RFC was "devoid of any legitimate evidentiary support." Second, plaintiff avers the ALJ's assessment of her physical impairments was defective, as certain of them were not explicitly mentioned in the decision, the consulting physicians' opinions were given too much weight, and plaintiff's subjective symptoms were inappropriately disregarded. Third, plaintiff argues the ALJ's "failure to meaningfully and legitimately address" a 2009 determination of disability was error. Plaintiff requests a remand for benefits or, alternatively, a remand for further proceedings. (ECF No. 17.)

The Commissioner counters plaintiff's arguments, contending the ALJ properly evaluated the medical and opinion evidence, properly developed the record, properly evaluated her symptom testimony, and properly formulated her RFC. Thus, the Commissioner maintains the ALJ's opinion should be affirmed. (ECF No. 24.)

///

///

4

## IV. DISCUSSION

The court focuses on the ALJ's assessment of plaintiff's mental impairments, finding these issues dispositive of plaintiff's case. At its core, the issue is one of an ALJ's duty to supplement the record.

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, the ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (cleaned up). This duty is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001). The duty is heightened where the claimant may have a mental illness and thus be unable to protect [her] own interests. Id. The duty also exists "even when the claimant is represented by counsel." Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); see also Smolen, 80 F.3d at 1288 (same). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150. Where a claimant contends the ALJ failed to supplement the record, "the burden is on the party attacking the agency's determination to show that prejudice resulted from the error." McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011).

In Tonapetyan, one of the claimant's treating psychiatrists diagnosed her with schizophrenia. 242 F.3d at 1150. A non-examining psychological consultant diagnosed the claimant with mild depression, but was equivocal about whether she also had schizophrenia. Id. The ALJ rejected the treating physician's diagnosis as unsupported by the record, and relied upon the consultant's opinion in disregarding plaintiff's claim of schizophrenia. Id. On appeal, the Ninth Circuit held that the evidence of the claimant's schizophrenia triggered the ALJ's duty to supplement the record, especially in light of the consultant's ambiguous analysis on the impairment. Id. In remanding, the court stated that the ALJ "was not free to ignore [the consultant's] specific recommendation that a more detailed report . . . be obtained." The Ninth

Circuit has discussed this duty at length in many other cases in the past few decades. Cf. Garcia v. Commissioner of Social Sec., 768 F.3d 925 (9th Cir. 2014) (where the ALJ relied upon medical records, including partial IQ scores, in assessing the claimant's mental impairments, the ALJ failed in his duty to supplement where a "fully and fairly developed record [would] include a complete set of IQ scores that report verbal, non-verbal, and full-scale abilities."); Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005) (remanding for the ALJ to supplement the record, where "the medical evidence was sufficiently ambiguous to trigger the ALJ's duty because of the obvious vicissitudes in [the claimant's] health, particularly the ways in which his conditions improved and worsened as a result of the afflictions and their treatments."); Smolen, 80 F.3d at 1288 (where a physician indicated a claimant's condition could have a material impact on the disability decision, the court ordered remand for the ALJ to further investigate).

However, not every instance of an allegedly-ignored impairment requires a remand. For example, in McLeod, the Ninth Circuit stated that the ALJ's duty was not triggered where "substantially all of [the physicians'] medical records throughout the time they treated [claimant] were before the ALJ. There was nothing unclear or ambiguous about what they said." 640 F.3d at 884; see also Mayes, 276 F.3d at 462 (finding the district court did not abuse its discretion in denying remand due to the alleged failure of the ALJ to supplement the record, where the plaintiff's back pain was not at issue in the hearing and where plaintiff lacked good cause for her failure to present evidence of her back pain); see also Celaya v. Halter, 332 F.3d 1177, 1185-86 (9th Cir. 2003) (Rawlinson, J., dissenting) ("The majority would require the ALJ to survey the reported symptoms for 'implicitly raised disabilities that are 'at least close' to the listing criteria, while remaining alert to the existence of a disability that no medical provider ever detected. This approach would transform Social Security administrative hearings into seance-like proceedings where the ALJ must divine implicit impairments, diagnose disabilities lying close to the listing criterion and detect any aura compelling further development of the record.").

On the record here, this case falls in between those remanding and those with substantial evidence supporting—and is very near the line counseling against remand. Plaintiff states "the record is replete with repeated diagnoses of bipolar disorder, chronic major depression, ADHD

6

and anxiety disorder." (ECF No. 17 at 10:25-26). She further argues "[b]y the time of the hearing, [it was] unambiguously established through the medical administrative record and [was] undeniably before the ALJ [that] Ms. Davis is afflicted by a number of significant mental health issues . . . ." (Id. at 11:12-14). While these statements are technically true, many of plaintiff's health records indicate she was primarily diagnosed with depression and anxiety—which the ALJ did in fact consider in formulating the RFC. The court sees no references to any ADHD diagnosis (save for a casual mention in her two-page brief submitted to the ALJ for the hearing, and plaintiff's brief testimony at the hearing), and plaintiff's failure to provide any citation to the record after making these broad assertions only adds to the difficulty in analyzing this issue under Ninth Circuit precedent. Additionally, plaintiff was represented at the hearing, and save for those brief mentions of her alleged mental impairments, she primarily focused on her alleged physical disabilities (which were the foundation for her obtaining benefits in 2009). (See, e.g., AT 287, answering only that she was "experiencing increased anxiety and depression . . . ."; AT 366, 398, 406, 419, 427, 443, and 612, reporting only depression, anxiety, and physical symptoms.) Thus, but for the Ninth Circuit's forgiving rule regarding an ALJ's enhanced duty, the court would have no issue finding that plaintiff failed in her burden to raise the issue with the ALJ and support it with appropriate evidence. Smolen, 80 F.3d at 1288 ("The claimant has the burden of proving that she is disabled.").

Despite these failures and inadequacies, the court notes a few compelling facts that ultimately tip the scales in favor of remand. First, the ALJ appears to have ignored the recommendation of a state agency psychological evaluator, who noted that while plaintiff's application did not raise any mental health issues, the record demonstrated plaintiff's history of being prescribed psychiatric medications. (See AT 102.) The evaluator stated that because the record was "not current it is impossible to determine if Clmt still has this [psychiatric diagnosis] or if [symptoms] have resolved." (Id.) The evaluator concluded "there is [insufficient evidence] to establish psych MDI," and that a "Psych [consultative examination] may be needed." (AT 102; 104-05; see also AT 118.) See Tonapetyan, 242 F.3d at 1150 (remanding where ambiguity in medical report triggered ALJ's duty to develop the record further). Despite these notes, no

7

mental examination was done.  Second, the evaluator's analysis is backed up by the medical records, including diagnoses of panic disorder (AT 577), as well as plaintiff's long history of being prescribed psychiatric medications—including Klonopin, Oxcarbazepine, and Seroquel.[3] (See AT 305-17, detailing plaintiff's prescription regimen; see also AT 383, 396, 422, 427-30, 577, 595, 675, 678, and 681.)  These medications are known for treating, among other conditions, bipolar and panic disorder, and the ambiguity requires an ALJ's analysis.  See Webb, 433 F.3d at 683 (ambiguity in the medical evidence triggers the ALJ's duty to supplement the record); see also Thai Ze Xiong v. Astrue, 2009 WL 737030 at *5 (E.D. Cal. March 19, 2009) (remanding for further development of the record, where the plaintiff's mental diagnosis and prescription list were not mentioned by the ALJ); Edlund, 253 F. 3d at 1156 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."). Thus, while the evidence is not as extensive as in Tonapetyan and other 'remand' cases cited above, it exists with such sufficiency to have triggered the ALJ's duty to develop the record further.

      Additionally, the court finds this failure to develop the record potentially prejudiced plaintiff.  The ALJ appears to have formulated plaintiff's RFC without consideration of the effect of plaintiff's other mental conditions (outside of her anxiety and depression), including whether her prescription regimen affects her ability to work.  The ALJ's failure to do so demonstrates a lack of substantial evidence, requiring remand.  McLeod 640 F.3d at 884; see, generally, Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence.")

      Regarding the remedy, the court recognizes plaintiff's request to simply remand with benefits.  See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  However, as should be clear, the undersigned cannot say that additional proceedings would have no utility.  Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016).  Simply, the ambiguity in plaintiff's medical records

---

[3] Contrary to the ALJ's statement, "[c]ourts specifically have recognized that the prescription of several of these medications connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence."  See Garrett v. Berryhill, 2017 WL 950467 at fn. 6 (E.D. Cal. March 10, 2017 (citing cases).

concerning her alleged mental impairments is for the ALJ, and not the Court, to resolve. <u>Edlund</u>, 253 F. 3d at 1156.

Because further proceedings are required, the court will not explicitly rule on plaintiff's other contentions (regarding the ALJ's analysis of her physical impairments and of the 2009 disability determination). However, the court would be remiss if it failed to mention that the ALJ's analysis on these issues appears well-reasoned. On remand, it is (of course) within the ALJ discretion as to how much additional analysis will be required on these issues. <u>See, e.g.</u>, 20 C.F.R. § 983 ("Any issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

## **RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The Commissioner's motion for summary judgment (ECF No. 24) be DENIED;

2. Plaintiff's motion for summary judgment (ECF No. 17) be GRANTED;

3. This matter be REMANDED for further administrative proceedings; and

4. The Clerk be directed to enter judgment in Plaintiff's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: March 24, 2020

davi.2415

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE